UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

LATURE IRVIN, SR.,

        Petitioner,

-against-                                      22 Civ. 4887 (CM)(SLC)

ANOTHONY J. ANNUCCI, et al.,

        Respondents.

---------------------------------------------------------------x

**MEMORANDUM ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING REPORT AS THE OPINION OF THE COURT, AND DISMISSING THE CASE**

McMahon, J.:

    Petitioner has filed objections to the Report and Recommendation of The Hon. Sarah L. Cave, U.S.M.J., in which the learned Magistrate Judge recommended that the court deny Petitioner's request for the issuance of a writ of habeas corpus and dismiss this case.

    Petitioner argues principally that Judge Cave erred in not finding that the New York Police Department and Manhattan District Attorney's Office violated his Fifth and Sixth Amendment rights by questioning him after he had unequivocally indicated that he did not wish to continue speaking without having his attorney present.

    After a careful review, I conclude that Judge Cave made no error in so concluding.

    The relevant exchange, excerpted by Petitioner in his brief supporting the objections (Dkt. #35) but reprinted in full in the brief opposing the objections that was filed by the District Attorney's Office (Dkt # 37), is as follows:

        PET:    [T]here's nothing that I don't want to volunteer to help resolve the murder of my friend Brandon…but I don't want to incriminate

1

myself in the process.

ADA: Then that is a decision that you and only you can make. I'm not your lawyer.

PET: Can I put my lawyer on speakerphone right now?

ADA: Are you asking to speak with an attorney?

Pet: I'm saying, I mean, to continue the interview with him on the phone present.

ADA: You have a right to an attorney, you have a right to consult with an attorney before speaking to the police or to me and to have an attorney present during any questioning. That's what the Miranda Warnings said. I can't, you know, there's a reason why they're written like that because I can't say it any clearer. The answer is, yes, of course you can.

Pet: Another thing is, as I told [the investigator], the other thing is stressing me out is how this situation was done at night in front of my six-year old. I just really needed to talk to my son and my wife.

INV: I understand that. We're here to speak to you, okay, and we're here to try to solve your best friend's death.

PET: Can I get just two minutes to talk to them on the phone while you sit here; I just want to call her and my son right now.

INV: Of course.

PET: Just to let them know…

INV: Of course.

PET: …that Daddy's helping the police with [ ] Brandon's murder and I'm not in any trouble.

INV: Yeah. Okay. Is that alright?

ADA: It's fine. It's fine. I mean, the reality is….

PET: I was holding my son when this happened when I walked out the barber Shop and they put handcuffs on me.

>   ADA: But you have to understand that the way they're gonna do things is the way they're gonna do things.
>
>   PET: I totally understand that. I didn't – I didn't – I wasn't disrespectful or anything.
>
>   ADA: And you're not being like that now.
>
>   INV: And you're being a gentleman now.
>
>   ADA: I need you to understand what's, you know, going on here and the reality is can you help – can you tell us about what you and Brandon were doing, without saying things that incriminate[] yourself, I don't know. I mean, don't – you're talking about illegal activity…in Los Angeles that has consequences in New York. So you know, the reality is that yes, you could, there can be consequences for that either here or there, alright, and I can't tell you that. If you want to talk to an attorney, that's your right. If you don't want to talk to us, that's your right. That's a decision that you need to make though for yourself. We can't make it for you. If you have questions…
>
>   PET: I just want to talk to my wife, my son, my kid.

In no way does this exchange contain an unequivocal demand to speak with counsel, such that the questioning authorities were required to stop the interview. Therefore, Judge Cave committed no error in concluding that the Appellate Division was wrong in so finding.

Let's unpack what happened here. Petitioner, expressing concern about the possibility of incriminating himself[1] asked whether it was possible to put his lawyer on the telephone. That sounds like a question – not a request or a demand for counsel – so at best Petitioner's words were equivocal. The ADA, obviously hearing what Petitioner said as a question, immediately stopped questioning and sought clarification of Petitioner's equivocal statement; he asked Petitioner straight out whether he was asking to speak with an attorney. Petitioner did not answer the ADA's direct and unequivocal question. Had he done so by saying, "Yes, I want to speak with an attorney,

---

[1] He had already done so, by telling the investigator and the ADA about his participation in Brandon's transcontinental drug dealing operation.

I want you to put my attorney on the phone," there would indeed have been a problem with further questioning.

But instead, Petitioner reiterated his own question, which is whether it was possible for the interview to continue with his attorney present by telephone. Petitioner's second statement appeared to be a continuation of his original question. So the ADA answered Petitioner's question; he said that it was indeed possible to continue the interview with an attorney on the phone ("The answer is yes, of course you can."). But more important, the ADA also reminded Petitioner that he had the right both to speak with an attorney and to consult with counsel before answering any further questions.

Having received both an answer to his original question ("Can I put my lawyer on speakerphone right now?" "The answer is yes, of course, you can.") as well as the ADA's advice that he had the absolute right to speak to and consult with an attorney before continuing with the interview, Petitioner did not unequivocally insist that his attorney be put on the phone before the interview could continue. He did not say, "Well, get on with it; put him on the phone; here's his name and number." In fact, he did not mention anything further about an attorney.

Instead, Petitioner, of his own accord, changed the subject -- he started asking about whether he could call his wife and son. Significantly, neither the ADA nor the Investigator asked Petitioner a single question, other than "Are you asking to speak with an attorney?" before Petitioner turned the focus of the conversation to his desire to talk to his family.

As the learned Magistrate Judge correctly concluded, questioning Petitioner following this exchange did not violate any clearly established Supreme Court precedent – specifically, the holding in *Smith v. Illinois*, 469 U.S. 91 (1984), the case on which Petitioner principally relies. In *Smith*, the Supreme Court held that courts cannot determine that a request for counsel was

4

equivocal by relying on statements and conduct that occur after an unequivocal request for counsel was made. (Objections, Dkt. #345 at 11-12). But here, Petitioner's question about whether counsel could be present by telephone was at best equivocal without regard to any subsequent statements or conduct. "Can you put him on the phone?" is not a demand but a question; and "I'm saying, I mean, to continue the interview with him on the phone…" sounds like a continuation of that question. The question might have been a request for counsel, but it can also be interpreted as asking whether it is physically or technologically possible to put the lawyer on the phone and continue the interview in that manner – which is not a demand for counsel. The fact that the statement could be interpreted in at least two different ways was, no doubt, why the ADA immediately sought clarification from Petitioner. He said, "Are you asking to speak with an attorney?" All Petitioner had to do was answer that question, "Yes I am," and the interview would have had to cease. But Petitioner did not respond to the ADA's direct question in a manner that provided the required clarification. His second statement appears to have been a continuation of the original question, and thereafter Petitioner did not say anything about a lawyer.

Furthermore, as the People contend in their brief in opposition to the objections, *Smith* forbids consideration of a suspect's post-request statements only if those statements were made in response to further interrogation. (*See* Dkt. #37, pp 7-8) – which was manifestly not the case here. The subsequent statements about wanting to speak with his wife and child were not prompted by a single question from either the ADA or the Investigator; Petitioner himself abruptly changed the subject from lawyers to family. Nothing in *Smith* forbids considering the statements that Petitioner (incorrectly) deems an unequivocal assertion of his right to counsel in light of his subsequent discussion about a family telephone call, unless those statements were tainted by additional questions that was potentially incriminating. Significantly, the only question that Petitioner was

asked during the exchange that followed his initial "Can you put him on the phone?" remark was, "Are you asking to speak with an attorney?" That is not a question designed to overbear Petitioner's will or coerce him into speaking when he does not wish to do so. And as quickly became apparent, Petitioner was not asserting his right to counsel.

I conclude that the learned Magistrate Judge neither failed to consider nor unreasonably applied clearly established federal law when she found that Petitioner's statements did not constitute an unequivocal assertion of his Sixth Amendment right to counsel, such that further questioning in the absence of counsel was constitutionally precluded. That being so, I adopt her recommendation that the Petition be dismissed.

While this conclusion is dispositive, so that there is no need to reach any alternative holding, I also conclude that Judge Cave did not err is according AEDPA deference to the Appellate Division's alternative finding that, even if, "Can I put my lawyer on speakerphone right now?" constituted an unequivocal assertion of the right to counsel, Petitioner's subsequent conduct constituted a waiver of that right, by holding that petitioner "immediately abandoned" his request that his lawyer be put on speakerphone. Nor was her harmless error analysis faulty.

In sum, I have considered the objections and I overrule them. I adopt the learned Magistrate Judge's Report as the decision of this court (together with this memorandum decision overruling Petitioner's objections), and I direct the Clerk of the Court to dismiss the petition and to close this case.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). Further, the Court finds, pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from an order denying Irvin's motion would not be taken in good

6

faith. *See Feliz v. United States*, No. 01-cv-5544, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002).

This constitutes the decision and order of the Court.

Dated: May 15, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL